# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### HATTIESBURG DIVISION

**WESLEY HEALTH SYSTEM, LLC**
**d/b/a WESLEY MEDICAL CENTER**                                   **PLAINTIFF**

**V.**                                   **CIVIL ACTION NO. 2:12-CV-59-KS-MTP**

**FORREST COUNTY BOARD OF**
**SUPERVISORS d/b/a FORREST GENERAL**
**HOSPITAL, et al.**                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

For all the reasons stated below, the Court **grants in part and denies in part** the Motion to Dismiss [25] filed by the Forrest County Board of Supervisors,[1] **grants** the Motion to Dismiss [27] filed by Wade Spruill, and **denies** the motion to dismiss [29] filed by AAA Ambulance Service. Finally, the Court stays consideration of Spruill's Motion for Sanctions [36].

## I. BACKGROUND

Plaintiff Wesley Medical Center alleges that Defendants – Forrest General Hospital, Wade Spruill, and AAA Ambulance Service – conspired to divert patients from Wesley to Forrest General. Plaintiff alleges that the Defendants ignored patients' desire to receive medical services at Wesley, intentionally falsified medical records to justify transporting patients to Forrest General, fraudulently obtained a disproportionate share of trauma funds from the State of Mississippi, intentionally

---

[1]Throughout this opinion, the Court will refer to the Board of Supervisors as "Forrest General Hospital" or "Forrest General."

interfered with Wesley's business practices, defamed Wesley by making false statements about the quality and type of services it offered, and ignored Mississippi's Trauma System destination guidelines. Plaintiff asserted claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act,[2] claims under the Sherman Act,[3] civil conspiracy, intentional interference with business relations, and defamation.

## II. FORREST GENERAL'S MOTION TO DISMISS [25]

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (punctuation omitted). "To survive a Rule 12(b)(6) motion to dismiss, [a plaintiff's complaint] need only include a short and plain statement of the claim showing that the pleader is entitled to relief." *Hershey v. Energy Transfer Partners., L.P.*, 610 F.3d 239, 245 (5th Cir. 2010) (punctuation omitted). However, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (punctuation omitted).

"To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). "The complaint need not contain detailed factual allegations, but must state more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

---

[2]18 U.S.C. § 1861, et seq.

[3]15 U.S.C. § 1, et seq.

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (punctuation omitted). When determining whether a plaintiff has stated a valid claim for relief, the Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210. However, the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Legal conclusions may provide "the complaint's framework, [but] they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009). A plaintiff must provide more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements, which do not permit the court to infer more than the mere possibility of misconduct." *Hershey*, 610 F.3d at 246 (punctuation omitted).

Of course, a "party may state as many separate claims . . . as it has, regardless of consistency." FED. R. CIV. P. 8(d)(3). The goal of this rule is "to afford a flexible procedural basis to permit full presentation of all relevant facts and legal theories at trial and to facilitate the final settlement of the dispute on its merits at that trial." *Am. Bridge Div., U.S. Steel Corp. v. Director, Office of Workers' Compensation Programs*, 679 F.2d 81, 83 (5th Cir. 1982). Accordingly, plaintiffs may plead contradictory grounds for relief. *See Tenn. Gas Pipeline Co. v. Miss. Cent. R.R. Co.*, 164 F. Supp. 2d 823, 828-29 (N.D. Miss. 2001). This principle has bearing on the present case insofar as Plaintiff pled both that Forrest General merely owns an interest in AAA, and that Forrest General controls AAA. Rule 8 permits such contradictory pleading.

3

## A.    RICO

"RICO creates a civil cause of action for any person injured in his business or property by reason of a violation" of 18 U.S.C. § 1962. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 550 (5th Cir. 2012). "Reduced to its three essentials, a civil RICO claim must involve: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Huntington Nat'l Bank v. McCann*, 268 F. App'x 359, 365 (5th Cir. 2008). To establish that Defendants engaged in a "pattern of racketeering activity," Plaintiff must show that Defendants committed at least two acts of racketeering activity, as defined by 18 U.S.C. § 1961(1). 18 U.S.C. § 1961(1), (5). Forrest General argues that it is immune from civil RICO liability because it is a government entity and, therefore, incapable of forming the specific intent necessary to commit any of the predicate acts alleged by Plaintiff.

Forrest General is a subdivision of Forrest County, Mississippi. *See Enroth v. Memorial Hosp. at Gulfport*, 566 So. 2d 202, 206 (Miss. 1990); *Martin v. Memorial Hosp.*, 86 F.3d 1391, 1399 (5th Cir. 1996). Substantial authority exists for the proposition that government entities are incapable of forming malicious intent.[4]

---

[4]*See Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991); *Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 449 (S.D. Tex. 1999); *County of Oakland by Kuhn v. Detroit*, 784 F. Supp. 1275, 1283 (E.D. Mich. 1992); *Smallwood v. Jefferson County Gov't*, 743 F. Supp. 502, 504 (W.D. Ky. 1990); *Massey v. Oklahoma City*, 643 F. Supp. 81, 85 (W.D. Okla. 1986); *Dale v. State of Mo. Governor Jay Nixon's Office*, 2011 U.S. Dist. LEXIS 50304, at *7-*8 (S.D. Tex. May 10, 2011).

However, Plaintiff alleged that Defendants committed at least ten acts of kidnapping. In Mississippi, "[k]idnapping is not a specific intent crime." *Milano v. State*, 790 So. 2d 179, 187 (Miss. 2001); *see also Williams v. Puckett*, 2000 U.S. Dist. LEXIS 22998, at *15 (S.D. Miss. July 20, 2000). "[I]t is sufficient that the surrounding circumstances resulted in a way to effectively become a kidnapping as opposed to the actual intent to kidnap." *Id.* Therefore, Forrest General's inability to form specific malicious intent is irrelevant to the kidnapping allegations.

**B.    *Sherman Act***

Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. To state a claim under Section 1 of the Sherman Act, "a plaintiff must show that the defendants (1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *Tunica Web Adver. v. Tunica Casino Operators Ass'n*, 496 F.3d 403, 409 (5th Cir. 2007) (punctuation omitted).

*1.    Intra-Corporate Conspiracy*

First, Forrest General argues that it is incapable of conspiring with the other Defendants because it owns and/or controls them. "Section 1 of the Sherman Act . . . reaches unreasonable restraints of trade effected by a contract, combination or conspiracy between separate entities. It does not reach conduct that is wholly unilateral." *Copperweld Corp. v. Independence Tube Corp.*, 467 US. 752, 768, 104 S. Ct. 2731, 81 L. Ed. 2d 628 (1984) (punctuation omitted).

> [A]n internal "agreement" to implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police. The officers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals.

*Id.* at 769, 104 S. Ct. 2731. Therefore, "officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy." *Id.* Likewise, "§ 1 is not violated by the internally coordinated conduct of a corporation and one of its unincorporated divisions," *Id.* at 770, 104 S. Ct. 2731, and "the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act." *Id.* at 771. Coordination among such parties "does not represent a sudden joining of two independent sources of economic power previously pursuing separate interests." *Id.*

"[S]ubstance, not form, should determine whether an entity is capable of conspiring under § 1." *American Needle, Inc. v. NFL*, 130 S. Ct. 2201, 176 L. Ed. 2d 947 (2010) (punctuation omitted).

> [T]he question is not whether the defendant is a legally single entity or has a single name; nor is the question whether the parties involved seem like one firm or multiple firms in any metaphysical sense. The key is whether the alleged contract, combination or conspiracy is concerted action – that is, whether it joins together separate decisionmakers. The relevant inquiry, therefore, is whether there is a contract, combination or conspiracy amongst separate economic actors pursuing separate economic interests, such that the agreement deprives the marketplace of independent centers of decisionmaking, and therefore of diversity of entrepreneurial interests, and thus of actual or potential competition.

*Id.* at 2212 (punctuation and internal citations omitted). The "inquiry is one of competitive reality." *Id.*

Plaintiff alleged that AAA is "owned in part and/or controlled by" Forrest General. In *Copperweld*, the Supreme Court only addressed whether a parent corporation and its *wholly-owned* subsidiary could conspire in violation of Section 1 of the Sherman Act. *Copperweld*, 467 U.S. at 755, 104 S. Ct. 2731. In *American Needle*, the Court held that "competitive reality" – rather than corporate form – determined whether defendants were capable of conspiring. *American Needle*, 130 S. Ct. at 2212. The allegations of the Amended Complaint could be construed either way – AAA may be merely "owned in part" by Forrest General without any substantial control exerted upon it, or it may be "controlled by" Forrest General. The Court must construe the Amended Complaint in the light most favorable to Plaintiff. *Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210. Additionally, Plaintiff is permitted to plead alternative theories of the case. FED. R. CIV. P. 8(d)(3). Therefore, the Court finds that Plaintiff alleged sufficient facts to create a plausible claim that Forrest General and AAA are separate economic actors pursuing separate economic interests.[5]

2.    *State Action Doctrine*

The Fifth Circuit has provided the following concise history of the state action

---

[5]Forrest General argues that Mississippi Code Section 41-55-9 establishes, as a matter of law, that Forrest General controls AAA. That statute provides that the "board of trustees of any hospital owned separately or jointly" by a county "may . . . own, operate, and maintain a public ambulance service as an integral part of its governmental function of operating and maintaining a hospital . . . ." MISS. CODE ANN. § 41-55-9. As Forrest General noted in briefing, substance – not form – controls the Court's analysis under *Copperweld* and *American Needle*. While this statute may grant Forrest General the authority to maintain an ownership interest in AAA, it does not speak to the economic reality of their relationship.

doctrine:

> In *Parker v. Brown*, 317 U.S. 341, 63 S. Ct. 307, 87 L. Ed. 315 (1943), the Supreme Court held that Congress did not intend for the antitrust laws to apply to states acting in their capacities as sovereigns. In subsequent cases, the Court extended the state action doctrine to cover, under certain circumstances, acts by private parties that stem from state power or authority, *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S. Ct. 937, 63 L. Ed. 2d 233 (1980), as well as acts by political subdivisions, cities and counties. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S. Ct. 1713, 85 L. ed. 2d 24 (1985).

*Martin*, 86 F.3d at 1397.

As noted above, Forrest General is a subdivision of Forrest County, Mississippi. *Id.* at 1399; *Enroth*, 566 So. 2d at 206. Therefore, to be entitled to the protection of the state action doctrine, Forrest General must demonstrate that the alleged anticompetitive activity was "authorized by the State pursuant to state policy to displace competition with regulation or monopoly public services." *Hallie*, 471 U.S. at 39, 105 S. Ct. 1713. It is not enough that Mississippi simply declared Forrest General's alleged activity to be lawful. *Id.* Rather, "a local entity seeking protection from federal antitrust laws must prove a state policy to displace competition." *Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Parish*, 171 F.3d 231, 234 (5th Cir. 1999).

Although Forrest General is not required to "point to a specific, detailed legislative authorization," *Hallie*, 471 U.S. at 39, 105 S. Ct. 1713, it must demonstrate a "clearly articulated and affirmatively expressed state policy to displace competition with regulation," and that "the legislature contemplated the kind of action complained of." *Id.* at 44, 105 S. Ct. 1713. This standard "resists any insistence upon a particular

formula or expression, so long as it is clear from the nature of the policy articulated that the state contemplates . . . a displacement of competition." *Surgical Care Ctr.*, 171 F.3d at 234. A mere "naked grant of authority" will not suffice. *Id.* Forrest General must point to a "statute that in empowering a [county] necessarily contemplates the anticompetitive activity," rather than one "that merely allows a [county] to do what other businesses can do." *Id.* at 235.

Forrest General cites Mississippi Code Section 41-59-5, which requires the Mississippi Department of Health ("MDOH") to "establish and maintain a program for the improvement and regulation of emergency medical services . . . in the State of Mississippi." MISS. CODE ANN. § 41-59-5(1). As part of this program, the legislature required MDOH to "provide for the regulation and licensing of public and private ambulance service, inspection and issuance of permits for ambulance vehicles, training and certification of EMS personnel, . . . and other related EMS activities." MISS. CODE ANN. § 41-59-5(2). The statute authorizes MDOH to "promulgate and enforce such rules, regulations and minimum standards as needed to carry out the provisions of" the statute, MISS. CODE ANN. § 41-59-5(3), and directs MDOH to "develop a uniform nonfragmented statewide trauma care system." MISS. CODE ANN. § 41-59-5(5). As part of the system, MDOH "promulgate[d] regulations specifying the methods and procedures by which Mississippi-licensed acute care facilities shall participate in the statewide trauma system." *Id.* Among these regulations are guidelines for determining whether a patient qualifies as a "trauma" patient and where the EMS provider should

transport them.[6]

Therefore, Forrest General argues that the Mississippi legislature has clearly stated a policy to regulate the "classification of patient injury" and displace any private efforts in that field with its own anticompetitive activity. Forrest General contends that Plaintiff's alleged injury, the "misclassification of patient injury," is a foreseeable result of this policy. This argument ignores the substantive factual allegations of the Amended Complaint and mischaracterizes Plaintiff's claims.

Plaintiff does not allege anticompetitive activity in the field of regulating EMS services. Rather, Plaintiff alleges anticompetitive activity in the field of *providing* EMS services. Plaintiff claims that Forrest General conspired to falsify medical records, intentionally misclassify patients' injuries, and transport patients to a facility at which they did not wish to receive medical treatment. The ultimate goal of the alleged conspiracy is to restrain trade in the field of EMS services, and the statute cited by Forrest General does not evince a state policy of displacing competition in that field. In fact, the statute contemplates the existence of private EMS services. *See* MISS. CODE ANN. § 41-59-5(2) (". . . board shall provide for the regulation and licensing of . . . private ambulance services . . ."). Furthermore, Mississippi Code Section 41-55-9 merely grants community-owned hospitals the authority to own and operate

_____

[6]Forrest General attached a copy of the "Consolidated Trauma Activation Criteria and Destination Guidelines" to its motion [26-1] and directed the Court to a full copy of the Board's regulations online. Plaintiff objects to the Court's consideration of these matters outside the pleading. Of course, the Court may consider matters of public record when deciding a motion to dismiss. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007).

ambulance services. *See* MISS. CODE ANN. § 41-55-9 (". . . board of trustees of any hospital owned . . . by one or more of such counties . . . may . . . own, operate, and maintain a public ambulance service . . ."). Therefore, Forrest General has failed to demonstrate the existence of a clear state policy to displace competition in the field of EMS services, and the Court rejects Forrest General's state action argument.

3.      *Local Government Antitrust Act*

Next, Forrest General argues that it is immune from antitrust damages under the Local Government Antitrust Act. "Congress endorsed and expanded the state action doctrine by the Local Government Antitrust Act of 1984, which protects municipalities against antitrust damage claims." *Martin*, 86 F.3d at 1397. The LGAA provides: "No damages, interest on damages, costs, or attorney's fees may be recovered under [15 U.S.C. §§ 15, 15A, or 15C] from any local government, or official or employee thereof acting in an official capacity." 15 U.S.C. § 35(a). However, 15 U.S.C. § 26 provides that any person damaged by an antitrust violation may seek injunctive relief, and that they shall receive their costs and reasonable attorney's fees if successful. 15 U.S.C. § 26; *Woolen v. Surtran Taxicabs, Inc.*, 801 F.2d 159, 168 (5th Cir. 1986); *Wicker v. Union Cnty. Gen. Hosp.*, 673 F. Supp. 177, 186 (N.D. Miss. 1987).

Therefore, Plaintiff may not recover any damages from Forrest General for alleged antitrust violations. However, Plaintiff may seek injunctive relief against Forrest General, and, if successful, Plaintiff may recover costs and fees. *Woolen*, 801 F.2d at 168.

**C.      *Civil Conspiracy***

11

Under Mississippi law, the elements of a civil conspiracy are: "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result." *Gallagher Bassett Servs. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004). Forrest General argues that it is incapable of conspiring with AAA and Spruill, citing the intra-corporate conspiracy doctrine. The Mississippi Supreme Court has never addressed the intra-corporate conspiracy doctrine. *Blades v. Countrywide Home Loans, Inc.*, No. 1:06-CV-1000-LG-JMR, 2007 U.S. Dist. LEXIS 69903, at *6 (S.D. Miss. Sept. 18, 2007). The federal courts in this state have applied it to state-law civil conspiracy claims, though, holding that "a corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Frye v. Am. Gen. Fin., Inc.*, 307 F. Supp. 2d 836, 843 (S.D. Miss. 2004); *see also Cooper v. Drexel Chem. Co.*, 949 F. Supp. 1275, 1285 (N.D. Miss. 1996).

The Court must determine, therefore, how it should apply an aspect of federal law, the intra-corporate conspiracy doctrine, to a Mississippi tort claim. The answer is uncertain. The Mississippi Supreme Court has not adopted the intra-corporate conspiracy doctrine – much less the "economic reality" standard cited above. *See American Needle*, 130 S. Ct. at 2212. While the federal courts in this state have guessed that the Mississippi Supreme Court would apply the intra-corporate conspiracy doctrine to state tort claims, they have not fleshed out the standard to be applied. Most of the judges addressing the issue – including the undersigned judge –

have simply declared that "a corporation cannot conspire with itself," with little consideration of the economic realities underlying the relationship between the parent and subsidiary. *See Frye*, 307 F. Supp. 2d at 843; *Cooper*, 949 F. Supp. at 1285; *Gardner v. Swedish Match N. Am., Inc.*, No. 2:04-CV-337-KS-JMR, 2006 U.S. Dist. LEXIS 44680, at *12-*13 (S.D. Miss. Apr. 17, 2006).

The notion, however, that a parent corporation is incapable of conspiring with its subsidiary assumes that the parent controls the subsidiary. As the Court noted above, it can not make that assumption based on the allegations of the Amended Complaint. Furthermore, if the Court is going to apply a federal defense to a state civil conspiracy claim, it should at least apply the defense in the same manner it is applied to the federal conspiracy claim – utilizing *American Needle*'s "economic reality" test. Therefore, the Court denies this aspect of Forrest General's motion to dismiss.

### D.    *Defamation*

To adequately plead a defamation claim, a plaintiff must allege the following elements: "(1) a false and defamatory statement was made concerning the plaintiff; (2) there was an unprivileged publication to a third party; (3) the publisher was negligent in publishing the defamatory statement; (4) the plaintiff suffered damages resulting from publication of the defamatory statement." *Mitchell v. Random House, Inc.*, 703 F. Supp. 1250, 1255 (S.D. Miss. 1988); *see also Armistead v. Minor*, 815 So. 2d 1189, 1193 (Miss. 2002). Forrest General argues that Plaintiff failed to allege that it made or published any defamatory statement.

Although Plaintiff broadly alleged that all three Defendants made defamatory

statements about it, Plaintiff failed to allege any specific defamatory statements published by Forrest General. Rather, Plaintiff alleged that AAA published the defamatory statements. However, Plaintiff pled alternative theories of liability – that Forrest General either controlled AAA or conspired with it. If Forrest General controlled AAA, then it could plausibly be liable for AAA's publication of defamatory statements. *See Bussen v. S. Cent. Bell Tel. Co.*, 682 F. Supp. 319, 325 (S.D. Miss. 1987) ("a master is liable for the acts of a servant when they are done in the furtherance of his employer's business, and within the real or apparent scope of his employment."); *Scott-Burr Stores Corp. v. Edgar*, 177 So. 766, 768-69 (Miss. 1938) (where manager of store acted within the scope of his duties, store could be held liable for his actions, including allegedly defamatory statements); *Hutton v. Am. Gen. Life & Accident Ins. Co.*, 909 So. 2d 87, 96 (Miss. Ct. App. 2005). Therefore, the Court finds that Plaintiff sufficiently alleged a defamation claim against Forrest General.

## E.    *Tortious Interference*

To adequately plead a claim of tortious interference with a business relationship, Plaintiff must allege: "(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted." *Nichols v. Tri-State Brick & Tile Co.*, 608 So. 2d 324, 328 (Miss. 1992). Forrest General argues that Plaintiff failed to allege that it committed any tortious acts which interfered with Plaintiff's prospective business relations.

Although Plaintiff broadly alleged that all three Defendants committed certain tortious acts (including kidnapping, making defamatory statements, and making false representations), Plaintiff failed to allege any specific tortious actions perpetrated by by Forrest General. However, as noted above, Plaintiff alleged a number of tortious actions by AAA and pled alternative theories of liability – that Forrest General either controlled AAA or conspired with it. If Forrest General controlled AAA, then it could plausibly be liable for AAA's tortious actions. *See Bussen*, 682 F. Supp. at 325; *Edgar*, 177 So. at 768-69; *Hutton*, 909 So. 2d at 96.

## F.    Twombly/Iqbal

Finally, Forrest General argues that all of Plaintiff's claims against it are based upon insufficient allegations of fact, citing *Twombly*[7] and *Iqbal*.[8] The Court disagrees. Although it is a close call and Plaintiff could have pled more specific facts, the Amended Complaint provides sufficient factual allegations to survive a 12(b)(6) motion. Plaintiff's claims against Forrest General can be categorized in two groups: those premised upon a conspiracy among the Defendants (RICO, Sherman Act), and those premised upon Forrest General's control of the other Defendants (state-law torts).

Plaintiff alleged that Forrest General controls AAA, and Plaintiff alleged that AAA committed specific tortious actions. Therefore, there is no *Twombly/Iqbal* issue with respect to the state tort claims.

---

[7]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. ed. 2d 929 (2007).

[8]*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

As for the conspiracy-based claims, Plaintiff alleged specific actions by AAA, Forrest General's ownership and/or control of AAA, and the effect of AAA's actions – more patients transported to Forrest General. Plaintiff also alleged that agents of AAA told a patient who wished to be transported to Wesley that they would "get in trouble" if they did not transport the patient to Forrest General. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937. Factual allegations often need "some setting suggesting the agreement necessary to make out a" claim under Section One of the Sherman Act; "without that further circumstance pointing toward a meeting of the minds," the complaint falls short of plausibility. *Twombly*, 550 U.S. at 557. The Court believes that Plaintiff's allegation that a AAA agent stated he would "get in trouble" if he didn't transport a patient to Forrest General is sufficient to suggest a meeting of the minds. Therefore, Plaintiff has pled enough facts to make out a plausible claim under Section One of the Sherman Act.

### III. SPRUILL'S MOTION TO DISMISS [27]

#### A.    RICO

Spruill argues that Plaintiff failed to plead sufficient facts to demonstrate that he participated in any of the alleged predicate acts.

> A person cannot be held liable for a RICO conspiracy merely by evidence that he associated with other . . . conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul. A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it

> suffices that he adopt the goal of further or facilitating the criminal endeavor. In other words, the conspirator need not expressly agree to violate the statute, but he must have known and agreed to assist in the underlying criminal offense.

*Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 538 (5th Cir. 2007) (punctuation and citations omitted). Therefore, to adequately plead a RICO claim against Spruill, Plaintiff must allege that Spruill "knew the criminal nature of" the alleged predicate acts "and intentionally acted to assist in the unlawful activity." *Id.*

Plaintiff failed to allege any specific actions by Spruill in assistance of the alleged predicate acts. Therefore, the Court grants Spruill's motion to dismiss as to Plaintiff's RICO claim against him.

## B.    *Sherman Act*

As stated above, to state a claim under Section 1 of the Sherman Act, "a plaintiff must show that the defendants (1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *Tunica Web Adver.*, 496 F.3d at 409. However, a "naked allegation of conspiracy or agreement, without more specific factual allegations, is not to be accepted as sufficient to state a claim under Section 1 of the Sherman Act." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007). Plaintiff has not alleged any specific actions, statements, or behavior by Spruill demonstrating that he engaged in a conspiracy in restraint of trade. The only specific allegation pertaining to Spruill is that he is AAA's CEO. That is not sufficient to demonstrate that he violated Section 1 of the Sherman Act. Accordingly, the Court grants Spruill's motion to dismiss as to Plaintiff's Sherman Act claim.

17

## C. *State Tort Claims*

Spruill failed to address the state tort claims in his initial brief. The Court does not typically consider arguments raised for the first time in a rebuttal. *Johnson v. Watkins*, 803 F. Supp. 2d 561, 575 n. 3 (S.D. Miss. 2011). However, Plaintiff addressed the sufficiency of its state tort allegations in response to the other Defendants' motions. Therefore, it would not prejudice Plaintiff to address Spruill's arguments with respect to the state tort claims.

"[W]hen a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable." *Miss. Printing Co. v. Maris, West & Baker, Inc.*, 492 So. 2d 977, 978 (Miss. 1986). As noted above, the only specific factual allegation pertaining to Spruill is that he is AAA's CEO. That is not sufficient to demonstrate that he directly participated in or authorized the commission of the torts alleged in this case. Accordingly, the Court grants Spruill's motion to dismiss as to Plaintiff's state tort claims.

## IV. AAA's Motion to Dismiss [29]

## A. *RICO*

AAA adopted Forrest General's argument in favor of dismissal of Plaintiff's RICO claim: that government entities are incapable of forming the malicious intent necessary to commit the predicate acts alleged by Plaintiff. Assuming that AAA's characterization of itself as a "government entity" or "instrumentality of a government entity" is correct, the Court rejects this argument for the same reasons stated in the Court's discussion of Forrest General's motion to dismiss.

18

## B.    Sherman Act

AAA also argues that Plaintiff's Sherman Act claim should be dismissed because 1) it is incapable of conspiring with Forrest General pursuant to the intra-corporate conspiracy doctrine; 2) it is immune from antitrust liability pursuant to the state action doctrine; and 3) it is immune from antitrust damages pursuant to the Local Government Antitrust Act. The Court presently rejects all of these arguments. As discussed above, it remains to be seen whether AAA is actually controlled by Forrest General, and the state action doctrine is inapplicable here.

## C.    Twombly/Iqbal

As discussed above, Plaintiff has pled sufficient factual matter to survive a motion to dismiss. AAA focuses on Plaintiff's failure to plead the names and dates of treatment of the unidentified patients referred to in the Amended Complaint. While Plaintiff could have pled more specific facts, the Amended Complaint, when viewed as a whole, is sufficient to raise plausible claims for relief.

## D.    Burford Abstention

Next, AAA argues that the Court should abstain from exercising jurisdiction over this matter pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1098, 87 L. Ed. 1424 (1943). Every abstention discussion begins with the "command that federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 144 (5th Cir. 2010). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* "*Burford* abstention is concerned with protecting complex state

administrative processes from undue federal interference." *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 2012 U.S. App. LEXIS 10761, at *22 (5th Cir. 2012). The Court considers five factors when determining whether *Burford* applies: "(1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review." *Id.* at *23-*24. "[T]he *Burford* doctrine does not require abstention whenever there exists a complex state administrative process, even if there is a potential for conflict with state regulatory law or policy." *Id.* at *22. "It is not appropriate when timely and adequate state-court review is not available, and *Burford* does not allow district courts to dismiss or remand actions that seek damages alone." *Id.* at *23.

In the Court's opinion, the *Burford* factors are neutral in this case. Plaintiff pled both federal and state causes of action. AAA has not identified any unsettled issues of state law, but the case will involve local facts. Mississippi has an important interest in regulating the provision of emergency medical services, and Mississippi needs a coherent policy in that area. However, AAA has not identified any administrative procedure by which Plaintiff may air its grievances.

In summary, this case involves issues related to Mississippi's regulation of emergency medical services, and the Court may be required to interpret and apply certain state regulations. However, while AAA urges that the Mississippi Department of Health should determine whether AAA and Forrest General have strayed from

20

applicable regulations related to the provision of emergency medical services to trauma patients, AAA has failed to identify any specific administrative procedure that would provide a more adequate forum. *See Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 272-73 (5th Cir. 2009). Plaintiff does not challenge the applicable regulations or any aspect of Mississippi's governance of emergency medical services. At most, the Court will have to apply certain state regulations, and AAA has not shown that those regulations are so complex that this Court will be unable to address them. *Id.*[9] Accordingly, the Court rejects AAA's *Burford* abstention argument.

### E.   *Primary Jurisdiction*

AAA also argues that the Court should apply the doctrine of "primary jurisdiction," which "attempts to maintain proper relationships between the courts and administrative agencies by suspending judicial process pending the referral of certain issues to an administrative agency for its views." *Elam v. Kan. City S. Ry.*, 635 F.3d 796, 809 (5th Cir. 2011). The doctrine applies where "(1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body." *Northwinds Abatement v. Employers Ins.*, 69 F.3d 1304, 1311 (5th Cir. 1995).

---

[9]Indeed, the Trauma Plan is not so complex that its application has been wholly delegated to the Department of Health. As noted below, for the Department of Health to enjoin an EMS provider from violating the Trauma Plan, it must seek relief in a chancery court. MISS. CODE ANN. § 41-59-45(4).

"[N]o fixed formula exists for applying the doctrine of primary jurisdiction," but "agency referral is favored when (a) it will promote even-handed treatment and uniformity in a highly regulated area, or when sporadic action by federal courts would disrupt an agency's delicate regulatory scheme; or (b) the agency possesses expertise in a specialized area with which the courts are relatively unfamiliar." *Elam*, 635 F.3d at 811. If the Court applies the doctrine, it may either retain jurisdiction of the case while it is referred to the state agency or dismiss the case without prejudice. *Id.* The Court is not required, however, to "resort to an expensive and merely delaying administrative proceeding when there are no substantial issues for the agency to decide." *Id.* (punctuation omitted).

It is undisputed that the Court has original jurisdiction over this case. Therefore, the Court must determine whether the adjudication of Plaintiff's claims will require the resolution of predicate issues of state law, and whether the Mississippi legislature has established a regulatory scheme committing such issues to the judgment of an administrative agency.

1.    *Predicate Issues of State Law*

Plaintiff argues that adjudication of its claims will not require the resolution of any predicate issues of state law. The Court disagrees. Mississippi's legislature directed the Mississippi Department of Health to "establish and maintain a program for the improvement and regulation of emergency medical services . . . in the State of Mississippi." MISS. CODE ANN. § 41-59-5(1). Among other things, the legislature required the Department of Health to "develop a uniform nonfragmented inclusive

statewide trauma care system that provides excellent patient care," and that it "develop and administer trauma regulations that include, but are not limited to, the Mississippi Trauma Care System Plan, trauma system standards, trauma center designations, field triage, [and] interfacility trauma transfer . . . ." MISS. CODE ANN. § 41-59-5(5). Accordingly, the Department of Health established EMS and trauma system regulations. *See* 15-12 MISS. CODE R. § 31 (LexisNexis 2012); 15-12 MISS. CODE R. § 32 (LexisNexis 2012).

According to the EMS regulations, a "Mississippi licensed ambulance service shall comply with the Mississippi State Trauma Plan as approved by the Mississippi State Department of Health, Bureau of Emergency Medical Services. Licensed service must follow the respective region's patient destination criteria and treatment protocols for the trauma patient as delineated by the State Trauma Plan." Appendix B to the Trauma Plan contains the "Consolidated Trauma Activation Criteria and Destination Guidelines," which consist of a flow chart of symptoms and appropriate courses of action. For example, "two or more proximal long bone fractures" dictate transportation to a "Level I, II, or III Trauma Center as appropriate for injuries," while pregnancies further along than twenty weeks dictate transportation "to the closest appropriate Trauma Center." The guidelines are far from certain, however, as they appear to allow significant room for the medical judgment of EMS personnel. Furthermore, the guidelines refer to region-specific transportation protocols that control in the absence of any listed trauma symptoms, but the parties have not directed the Court to any such protocols.

Plaintiff's clams stem from the central premise that Defendants wrongfully transported patients to Forrest General Hospital when they should have gone to Wesley Medical Center. To assess that premise, the Court will be required to interpret and apply the regulations cited above and apply them to medical records. Of course, this is not the only issue in the case. Plaintiff pled a variety of claims, and Defendants have asserted a variety of defenses. Among those defenses, however, is Defendants' claim that they fully complied with the applicable state regulations. Therefore, this Court will be forced, at some point in the litigation, to address that issue. Accordingly, the Court finds that Defendants' compliance with Mississippi's Trauma Plan and all other applicable regulations, is a predicate issue that will have to be addressed before the resolution of Plaintiffs' tort claims, antitrust claims, or RICO claims.

2. *Administrative Agency*

Next, the Court must determine whether the Mississippi legislature established a regulatory scheme whereby it committed the resolution of these predicate issues to an administrative body. Any person who violates the Department of Health's regulations "shall, after due notice and hearing, be subject to an administrative fine not to exceed One Thousand Dollars ($1,000.00) per occurrence." MISS. CODE ANN. § 41-59-45(2). The Department of Health may "cause to be instituted a civil action in the chancery court . . . for injunctive relief to prevent any violation" of the Trauma Plan and EMS regulations. MISS. CODE ANN. § 41-59-45(4). Therefore, while the Department of Health may directly impose an administrative fine, it can not grant Plaintiff's requested injunctive relief. Rather, the statute grants the Department of Health the

authority to seek judicial relief in the chancery court. Furthermore, AAA has failed to cite – and the Court has been unable to find – any statute or regulation establishing an administrative procedure through which Plaintiff may seek relief from or initiate action by the Department of Health.

Accordingly, the Court finds that AAA has failed to demonstrate that the Mississippi legislature has established a regulatory scheme whereby it has committed the findings necessary for the resolution of this case to an administrative body. While the Department of Health may levy administrative fines and initiate a civil action for injunctive relief,[10] there does not appear to be a mechanism or procedure by which Plaintiff may initiate such action. In short, AAA has failed to cite an administrative procedure to which this Court may defer. Therefore, the Court will not apply the "primary jurisdiction" doctrine in this case.

## F.    *Defamation*

Finally, AAA argues that Plaintiff has not pled sufficient facts to support a defamation claim. Specifically, AAA argues that Plaintiff did not allege enough specific facts for it to admit, deny, or defend against Plaintiff's defamation claim. The elements of a defamation claim are: "(1) a false and defamatory statement was made concerning the plaintiff; (2) there was an unprivileged publication to a third party; (3) the publisher was negligent in publishing the defamatory statement; (4) the plaintiff

---

[10]The Court also questions whether it is necessary to refer the case to the Department of Health when it may merely seek the decision of another court which is no better equipped to address these matters than this one.

suffered damages resulting from publication of the defamatory statement." *Mitchell*, 703 F. Supp. at 1255. "Quite consistently, . . . courts have found that Mississippi law requires that a complaint for defamation must provide allegations of sufficient particularity so as to give the defendant or defendants notice of the nature of the complained-of statements." *Chalk v. Bertholf*, 980 So. 2d 290, 297 (Miss. Ct. App. 2007).

Plaintiff alleged, in pertinent part, that AAA's agents made the following false statements to patients: (1) that Plaintiff "would not want" a patient; (2) that Plaintiff "did not have trauma care available;" (3) that Plaintiff "was not equipped with the surgeons and stuff that Forrest General has for a trauma;" (4) that Plaintiff would not want a patient to deliver her child there; and (5) that Plaintiff was "not an accredited facility for handling stroke patients." Plaintiff has alleged sufficient facts to make out the four elements of a defamation claim, and Plaintiff's allegations are sufficiently particular to provide AAA with notice of the defamatory nature of the statements. Plaintiff could have provided more information, to be sure. However, in the Court's opinion, these allegations are sufficient to meet Rule 8's standard.

## V. MOTION FOR SANCTIONS [36]

The Court has insufficient evidence to address Spruill's motion for sanctions. Therefore, the Court stays consideration of the motion until the parties have had a chance to conduct discovery. Although the Court dismisses Plaintiff's claims against Spruill, he shall remain a party to this litigation solely for the purpose of resolving the ancillary issue of sanctions. After the parties have conducted discovery, Spruill may

re-urge the motion, and Plaintiff may respond accordingly.

## VI. CONCLUSION

The Court denies Forrest General's motion to dismiss [25] in all respects but one. Pursuant to the Local Government Antitrust Act, Plaintiff may not recover any damages from Forrest General under the Sherman Act. Plaintiff may, however, seek injunctive relief against Forrest General, and, if successful, Plaintiff may recover costs and fees. The Court grants Wade Spruill's motion to dismiss [27], but it denies AAA Ambulance Service's motion to dismiss [29]. Finally, the Court stays consideration of Spruill's Motion for Sanctions [36].

SO ORDERED AND ADJUDGED this, the 9th day of October, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE