IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

WESLEY HEALTH SYSTEM, LLC
d/b/a WESLEY MEDICAL CENTER                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 2:12-CV-00059-KS-MTP

FORREST COUNTY BOARD OF
SUPERVISORS d/b/a FORREST
GENERAL HOSPITAL, ET AL.                                       DEFENDANTS

**MEMORANDUM OF LAW IN SUPPORT
OF FORREST GENERAL HOSPITAL'S MOTION
FOR SUMMARY JUDGMENT**

Wesley Medical Center ("Wesley") alleged in its First Amended Complaint that Forrest

General Hospital ("FGH") and AAA Ambulance Service ("AAA") conspired to divert patients

from Wesley to FGH [Document 21 at ¶ 12]. According to Wesley, that alleged conspiracy

violates RICO, 18 U.S.C. §§ 1961, *et seq.*, the Sherman Act, 15 U.S.C. §§ 1, *et seq.*, and

Mississippi civil law [Document 21 at ¶ 18]. In addition, Wesley alleged that FGH interfered

with Wesley's business relations by making "false, defamatory and fraudulent

misrepresentations" about Wesley [Document 21 at ¶ 124], and defamed Wesley by making

"false statements of fact" about Wesley [Document 21 at ¶ 129]. For the reasons set forth herein,

FGH is entitled to summary judgment on all of Wesley's remaining claims.[1]

**ARGUMENT**

**I.      Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is warranted "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1] The Court already has dismissed Wesley's claim for damages under the Sherman Act [Document 43 at p. 27].

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To support a motion for summary judgment, "'the moving party . . . [has] the burden of showing the absence of a genuine issue as to any material fact . . . .'" *Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 589 (5th Cir. 2004)(citation omitted). "For any matter on which the non-movant would bear the burden of proof at trial, . . . the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995)(citing *Celotex*, 477 U.S. at 322-23).

If the movant satisfies its initial burden, the burden shifts back to the non-moving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Allegations that one 'might could' show certain facts at trial are simply insufficient under Rule 56(e)." *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 403 (5th Cir.1979). Rather, "[i]n the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita,* 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

Rule 56 "mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1520 (5th Cir. 1993)(citing *Celotex*, 477 U.S. at 322). "A complete failure of proof on an

2

essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus., Inc*., 839 F.2d 1121, 1122 (5th Cir. 1988) (citing *Celotex*, 477 U.S. at 322-23).

## II. FGH Is Entitled to Summary Judgment Dismissing Wesley's Sherman Act and Civil Conspiracy Claims.

Concerted action is an essential element of Wesley's claim that FGH and AAA conspired to violate the Sherman Act. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). The same is true of Wesley's civil conspiracy claim under Mississippi law. *See Gallagher Bassett Servs. v. Jeffcoat,* 887 So.2d 777, 786 (Miss. 2004) (plaintiff must show agreement between two or more persons or corporations). Based upon Wesley's recent deposition testimony and other undisputed facts, it is clear that Wesley cannot sustain its burden.

Wesley was deposed on March 18-19, 2013. Its corporate representative, Travis Sisson, was asked who at FGH conspired with AAA to divert patients. Mr. Sisson named Evan Dillard and Wade Spruill, both of whom are employees of FGH. Motion Ex. "A" at 58.[2] When asked to identify the AAA conspirators, Mr. Sisson said, "the leaders in AAA," but could not name them.[3] *Id.*

As evidenced by the Affidavit of Evan Dillard, Chairman, President and CEO of FGH, and Chairman of AAA, the leadership team of AAA is comprised solely of FGH employees, *i.e.*

---

[2] Messrs. Dillard and Spruill categorically deny the existence of any such conspiracy. Motion Ex "B" at ¶ 12; Affidavit of Wade Spruill.

[3] Mr. Sisson and, thus, Wesley also did not know when the alleged conspirators reached their agreement, the terms of the agreement, or whether the agreement was verbal or in writing. Motion Ex. "A" at 60-61. Amazingly, when asked if Wesley contends that Evan Dillard instructed AAA to divert patients to Wesley, Mr. Sisson confessed: "We hope to find that out. That's why we filed the lawsuit." *Id.* at 62-63.

JM EWH 1185931 v2
2138216-000006  04/18/2013

Wade Spruill (CEO), Butch Evanson (CFO) and Chuck Carter (COO).  Motion Ex. "B" at ¶ 10.[4]

Under settled federal and Mississippi law, a corporation cannot conspire with its employees.

*See, e.g., Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)

(Sherman Act); *Saucier v. Coldwell Banker JME Realty*, 644 F. Supp. 2d 769, 784 (S.D. Miss.

2007) (applying *Nelson Radio* to Mississippi state law conspiracy claim); *Smith v. Union Nat'l*

*Life Ins. Co.*, 286 F. Supp. 2d 782, 784 (S.D. Miss. 2003) (under Mississippi law, employer and

employee cannot conspire).  Therefore, Wesley's Sherman Act[5] and Mississippi civil conspiracy

claims[6] fail as a matter of law.

### III.    FGH Is Entitled to Summary Judgment Dismissing Plaintiff's Civil RICO Claims.

According to Wesley, the activities of FGH and AAA violate RICO [Document 21 at ¶

100] and entitle Wesley to recover treble damages [Document 21 at ¶ 135(d)].[7]  Wesley is

wrong.

---

[4] The fact that FGH employees are running AAA should not be surprising, since FGH owns AAA and controls a majority of the membership of the AAA Board of Directors.  Motion Ex. "B" at ¶¶ 6-9.

[5] In its Motion to Dismiss, FGH argued that Wesley's Sherman Act conspiracy claim should have been dismissed, because Wesley alleged that FGH "controls" AAA [Documents 26 at pp. 7-9; 39 at pp. 3-6].  The Court at that time ruled that the First Amended Complaint could be construed to allege that FGH merely owned, not controlled, AAA. [Document 43 at p. 7].  Wesley now concedes that FGH controls AAA, Motion Ex. "A" at p. 245, making summary judgment appropriate on that basis as well.

[6] Also, Wesley admits it has no direct evidence of a conspiracy.  *See* n. 3, *supra.*  While circumstantial evidence can create an inference of a conspiracy,  Wesley in its deposition failed to identify any evidence that rises above "speculation and conjecture."  *Saucier, supra,* 644 F. Supp. 2d at 784.  Such evidence cannot create an inference.  *Id.*

[7] Wesley also seeks injunctive relief [Document 21 at ¶ 135(a)], which is not available to civil RICO plaintiffs.  *See, e.g., Religious Tech. Ctr.* v. *Wollersheim,* 796 F.2d 1076, 1082-89 (9th Cir. 1986)(private party may not obtain injunctive relief in a civil RICO action); *In re Fredeman Litig*., 843 F.2d 821, 828-30 (5th Cir. 1988)(finding *Wollersheim* persuasive in reversing preliminary injunction granted by trial court); *Curley v. Cumberland Farms Dairy, Inc*., 728 F.Supp. 1123, 1136-37 (D.N.J. 1989)(dismissing claims for injunctive relief under RICO and stating "[c]ourts that have addressed the availability of injunctive relief under RICO have almost uniformly concluded that RICO does not afford a private injunctive remedy"); *First Nat. Bank & Trust Co. v. Hollingsworth*, 701 F.Supp. 701, 703-704 (W.D. Ark. 1988)("In the court's view the analysis of the *Wollersheim* opinion is persuasive. In fact, after reviewing the legislative history, it would be difficult, if not impossible, to draw a different conclusion.").

4

## A. RICO's Treble Damages Provision Is Mandatory.

18 U.S.C. § 1964(c) establishes a treble damages civil remedy for violations of 18 U.S.C. § 1962 and provides that

> [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

The Fifth Circuit and numerous other courts have held that the treble damages provision of § 1964(c) is mandatory. *See Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1129 n. 27 (5th Cir. 1988) (trial court "was required under 18 U.S.C. § 1964(c) to treble the bondholders' damages")(vacated on other grounds *Fryar v. Abell*, 492 U.S. 914 (1989)); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3rd Cir. 1991)(noting RICO's "mandatory provision for treble damages"); *Cullen v. Margiotta*, 811 F.2d 698, 713 (2d Cir.), *cert. denied*, 483 U.S. 1021 (1987)("civil RICO requires that a successful plaintiff be awarded treble damages"); *MDO Development Corp. v. Kelly*, 735 F.Supp. 591, 593 (S.D.N.Y. 1990)("imposition of treble damages is required by RICO").

## B. RICO's Treble Damages Provision Is Punitive.

In *Abell*, the Fifth Circuit squarely addressed the nature of RICO's treble damages provision and determined that it is punitive:

> We hold that the portion of RICO damages in excess of actual damages is penal. Those added damages are "not limited to the damages suffered"; they seem more designed to deter than to compensate. As Congress constructed them, the civil provisions of RICO compensate primarily victims of fraud or fraudulent schemes. Had Congress merely wanted to make whole this new class of plaintiffs, it would have limited civil RICO damages to the actual damages commonly available to fraud victims.

*Abell*, *supra*, 858 F.2d at 1141. Numerous other courts have held the same. *See, e.g., Genty*, *supra*, 937 F.2d at 914 ("A civil claim brought under Section 1964(c) of the RICO Act carries a

5

mandatory award of treble damages, which are predominately punitive in character."); *Dammon v. Folse*, 846 F.Supp. 36, 38 (E.D. La. 1994)("treble damages are primarily and essentially punitive in nature"); *Harris v. Coldwell Banker Real Estate Corp.*, No. 4:05CV176-P-A, 2007 WL 3197231 at *1 (N.D. Miss. Oct. 26, 2007)(attorneys' fees and RICO treble damages are punitive in nature).

### C. FGH, A Governmental Entity, Is Not Subject to RICO's Mandatory and Punitive Treble Damages Provision.

This Court correctly has held that FGH is a governmental entity [Document 43 at p. 4]. Congress did not intend to subject governmental entities to mandatory awards of treble damages, which serve a punitive purpose. To do so would impose punitive damages upon innocent taxpayers, as numerous courts have held in dismissing civil RICO claims against governmental entities.

The leading case is *Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3rd Cir. 1991). In *Genty*, the appellant homeowners alleged that the Township of Gloucester conspired with a developer and mortgage lender in violation of RICO to promote the sale of property near a landfill, despite their knowledge of the landfill's toxicity. *Id.* at 903. The homeowners appealed the district court's conclusion that "a municipality is not capable of forming the criminal intent necessary to commit any of the predicate acts of racketeering" required by RICO *Id.* at 907. The court, after analyzing various cases, stated:

> Although the prevailing view in most jurisdictions seems to hold that corporate entities in most cases can have imputed to them the *mens rea* to be civilly liable for wrongs committed with a specific intent, we need not decide in light of the result we reach whether municipal corporations under RICO are an exception to this general rule. Instead, we turn to the purposes of civil RICO, primarily its treble damage provision, to determine whether municipal corporations are within the ambit of its objectives.

JM EWH 1185931 v2
2138216-000006  04/18/2013

*Id.* at 910.  The court, citing *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 (1981), noted that "for well over a century, most jurisdictions have recognized the principle that municipalities, even when acting in their proprietary capacity, are exempt from punitive damages, unless a statute expressly provides such damage awards against municipalities." *Id.*[8]  The court further noted that:

> The reason behind this common law prohibition is that an assessment of extraordinary damages against a public entity serves neither the retributive nor the deterrent purposes of the civil punishment and contravenes public policy by punishing the taxpayers and citizens who constitute the very persons who are to benefit from the public example which the granting of such damages is supposed to make of the wrongdoer.

*Id.* (quoting *Fisher v. Miami*, 160 So.2d 57, 59 (Fla. App. 1964)).

> After determining that RICO's treble damage provision was mandatory, the court stated:

> Although treble damages necessarily compensate the immediate RICO victim, the prevailing punitive nature of section 1964(c)'s compulsory award of treble damages convinces us that Congress, in keeping with the common law, did not intend to subject municipal corporations to RICO liability. Courts will not interpret statutes to overturn well-established common law principles unless Congress so authorizes.

*Id.* at 914 (citations omitted).  Ultimately, the court held:

> [A] civil claim brought under section 1964(c) of the RICO Act, with its mandatory award of treble damages which are punitive in character, cannot be maintained against a municipal corporation. In so doing, we iterate that we perceive no intention of Congress to abrogate the long-established and salutary principle of common law prohibiting punitive damages against municipalities.

*Id.*

District courts within the Fifth Circuit consistently have adopted the reasoning of *Genty*. For example, in *Dammon v. Folse*, 846 F.Supp. 36 (E.D. La. 1994), the plaintiffs brought RICO claims against a school board and other defendants.  The school board, citing *Lancaster*

---

[8] Mississippi prohibits awards of punitive damages against governmental entities.  Miss. Code Ann. § 11-46-15(2).

JM EWH 1185931 v2
2138216-000006  04/18/2013

*Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397 (9th Cir. 1991), argued that it could not be held liable under RICO "because a municipal entity lacks the ability to form the criminal intent necessary to commit the required predicate acts under RICO." *Id.* at 37. The court noted that "the School Board is half right," cited *Genty* with approval, and adopted what it dubbed a "hybrid *Lancaster–Genty* rationale" for rejecting RICO liability for the school board:

> This Court is of the belief that the two circuit theories for refusing to hold a municipal entity liable under RICO are not mutually exclusive—indeed, it can be said that they are two sides of the same concept. In an abstract but doctrinal sense, a corporation in and of itself cannot form *mens rea*. Similarly, a corporation, that is, the institutional construct itself, cannot be deterred; deterrence can only be achieved by targeting the behavior of the people who determine corporate conduct. Thus, if punitive damages would not operate to encourage innocent and essentially powerless taxpayers to prevent RICO's condemned activity by municipal officials, short of the election process, it would seem inappropriate to hold the municipal corporation liable.
>
> . . . .
>
> Thus, the justification for the reluctance to impose RICO liability against municipal corporations is not merely due to the inability of municipal corporations to form the requisite criminal intent. That is only a glimpse of the rationale: the rule rests on the ineffectiveness of attempting to deter the behavior of a public corporation by way of punitive damages. In addition, it must also be stressed that the rule against imposing punitive damages on a municipality is conceptually sound because taxpayers, who are supposed to be protected by the RICO law, ought not be punished when RICO is violated by agents over whom they have little or no control.

*Id.* at 38-39. Finally, the court noted that its rationale for rejecting RICO liability for the school board extended to all the subparts of § 1962, and further noted that "respondeat superior is not available as an end-run around this bar on RICO liability." *Id.* at 39.

Likewise, in analyzing a municipality's motion to dismiss plaintiff's claims for punitive damages under the Federal Fair Housing Act and 42 U.S.C. § 1982, the Court cited the rational of *Genty* with approval. *See L&F Homes & Development v. City of Gulfport,* No. 1:10cv387HSO–JMR, 2011 WL 5563205 (S.D.Miss. Nov. 15, 2011). In that case, Judge Ozerden dismissed the plaintiff's punitive damage claims against the City of Gulfport, noting:

8

While the Court has located no cases specifically addressing the issue of the recovery of punitive damages under § 1982 or the FHA, there is authority for the proposition that where a statute does not specifically address the recovery of punitive damages, they are not ordinarily recoverable against a municipality. *See, e.g., Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir. 1991)(municipal entities immune from punitive damages under Racketeer Influenced and Corrupt Organizations Act); *Butler v. South Glen Falls Cent. School Dist.*, 106 F.Supp.2d 414, 421 (N.D.N.Y. 2000)(municipalities are immune from punitive damages claims brought pursuant to the Rehabilitation Act); *Short v. City of West Point*, 1996 WL 737535, *7 (N.D. Miss. 1996) (punitive damages not recoverable for § 1981 claims against the City); *see also Town of Newton v. Wilson*, 91 So. 419 (Miss. 1922)(punitive damages not recoverable against municipality unless authorized by statute).

*Id.* at *3. Judge Ozerden further cited *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267

(1981), in which the Supreme Court concluded:

[P]unitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers.

2011 WL 5563205 at *3.

**IV.    Wesley's Intentional Interference With Business and Prospective Business Relations and Defamation Claims Fail As A Matter of Law.**

As previously indicated, Wesley has asserted tortious interference[9] and defamation

claims against FGH. However, FGH is a governmental entity [Document 43 at p. 4] and, as

such, enjoys immunity from such claims.

[A] governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander [or] defamation . . . .

Miss. Code Ann. §11-46-5(2).[10]

---

[9] Again, the tortious interference allegedly flowed from FGH's false and defamatory statements about Wesley [Document 21 at ¶ 124].

[10] A civil conspiracy claim "'must be based on an underlying tort.'" *Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 822 (N.D. Miss. 2011) (citations omitted); *Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 755 (S.D. Miss. (continued)

JM EWH 1185931 v2
2138216-000006  04/18/2013

**CONCLUSION**

For the reasons stated, FGH respectfully requests the Court to grant its motion for summary judgment.

This the 18th day of April, 2013.

Respectfully submitted,

FORREST GENERAL HOSPITAL

By Its Attorneys,
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

By: /s/ *William N. Reed*
    WILLIAM N. REED

William N. Reed (MSB No.4689)
Bradley S. Clanton (MSB No. 10505)
Eric W. Hospodor (MSB No. 102041)
D. Sterling Kidd (MS Bar No. 103670)
Baker, Donelson, Bearman,
Caldwell & Berkowitz, PC
4268 I-55 North, Meadowbrook Office Park
Jackson, MS   39211
Post Office Box 14167
Jackson, MS   39236
Telephone:  (601) 351-2400
Facsimile:   (601) 351-2424
wreed@bakerdonelson.com bclanton@bakerdonelson.com
ehospodor@bakerdonelson.com
skidd@bakerdonelson.com

---

2001).  Since FGH is immune from liability for the underlying torts alleged by Wesley – tortious interference and defamation – the civil conspiracy claim necessarily fails.

JM EWH 1185931 v2
2138216-000006  04/18/2013

**AND**

James K. Dukes (MSB No. 6216)
DUKES, DUKES & WOOD
226 W. Pine St.
Hattiesburg, MS 39401
Telephone:  (601) 544-4121
Facsimile:   (601) 544-4425
jdukes@jdukeslaw.com

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the foregoing Rebuttal Memorandum with the Clerk of the Court using the ECF system which will send notification of the filing to all counsel listed below:

Kathryn R. Gilchrist, Esq.
William C. Brabec, Esq.
C. Phillip Buffington, Jr., Esq.
David Weldon Donnell, Esq.
Michael Scott Jones, Esq.

***Counsel for Wesley Health System, LLC***
***d/b/a Wesley Medical Center***

Michael J. Tarleton, Esq.

***Counsel for AAA Ambulance Service***

Michael B. Wallace, Esq.
Joe D. Stevens, Esq.

***Counsel for Wade Spruill***

This the 18th day of April, 2013.

/s/ *William N. Reed*
WILLIAM N. REED

11